**Joseph MARCHETTI, Jr.**

v.

**SUN LIFE ASSURANCE COMPANY OF CANADA, et al.**

No. 3:98–0067.

United States District Court, M.D. Tennessee.

Dec. 18, 1998.

Bynum E. Tudor, III, Nashville, TN, for Plaintiff.

John S. Hicks, Lawrence Slade Eastwood, Jr., William N. Ozier, Nashville, TN, for Defendants.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are a Motion for Summary Judgment filed by Plaintiff (Docket No. 15) and a Motion for Summary Judgment filed by Defendants Sun Life Assurance Company of Canada ("Sun Life") and Diane J. Marino (Docket No. 20).

For the reasons stated herein, the parties' motions are treated as motions for judgment, not summary judgment. Judgment is entered for the Plaintiff against Defendants Sun Life and Marino on Plaintiff's ERISA claims, and the decision of the administrator is REVERSED. Thus, Plaintiff's Motion for Summary Judgment (Docket No. 15) is DENIED as moot, and Defendants' Motion for Summary Judgment (Docket No. 20) is DENIED.

This action arises pursuant to two federal statutes, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq. Plaintiff is a former employee of Defendant Thompson Machinery Commerce Corporation ("Thompson") and was a "plan participant" in the Thompson Group Long Term Disability Plan ("the Plan"), an employee benefit plan funded and maintained by Defendant Thompson through a group long term disability insurance policy ("the Policy") issued by Defendant Sun Life.

Plaintiff's Complaint alleges that Defendant Thompson is the Plan Administrator of the Plan and that each of the Defendants is a "fiduciary" with respect to the Plan, within the meaning of ERISA. Plaintiff avers that Defendant Sun Life is responsible for adjudicating and processing benefit claims under the Policy. Plaintiff also contends that Defendant Thompson is an "employer" for purposes of the FMLA.

Plaintiff's Complaint alleges that Defendants breached their fiduciary duties to Plaintiff under ERISA and wrongfully denied his claim for disability benefits. Plaintiff also contends that Defendant Thompson violated the FMLA by interfering with Plaintiff's exercise of his FMLA rights and discriminating against Plaintiff for opposing a practice made unlawful by the FMLA.

Plaintiff's Motion for Summary Judgment (Docket No. 15) is really a motion for partial summary judgment, in that it seeks judgment only with regard to Defendants Sun Life and Marino and only with regard to Plaintiff's ERISA claim. Defendants' Motion for Summary Judgment (Docket No. 20) seeks judgment on all claims against Defendants Sun Life and Marino.

## SUMMARY JUDGMENT IN ERISA ACTIONS

The Sixth Circuit Court of Appeals has ruled that summary judgment procedures are inapposite to ERISA actions to recover benefits and, thus, should not be utilized in their disposition. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir.1998). The court found that, because a district court should not adjudicate an ERISA action as if it were conducting a standard bench trial, the idea of determining whether there is a genuine issue of fact for trial would make little sense. *Id.,* pp. 618–19.

■■■ Accordingly, the court offered guidance to the district courts by identifying the following steps to employ in adjudicating an ERISA action. As to the merits of the claim, the court should conduct a "de novo" or "arbitrary and capricious" review[1] based solely upon the administrative record and render findings of fact and conclusions of law accordingly. In so doing, the court may consider the parties' arguments concerning the proper analysis of the evidence contained in the administrative record; but, with the exception identified below, it may not admit or consider any evidence not presented to the administrator. *Id.,* p. 619.

■■■ The court should consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process or alleged bias. As noted above, neither the bench trial nor summary judgment procedures should be employed in deciding ERISA cases. *Id.,* pp. 619–20.

In accordance with this Sixth Circuit ruling, the Court will render findings of fact and conclusions of law on the parties' motions herein, will consider only the administrative record as filed with the Court, and will enter judgment, not summary judgment, on the ERISA issue.

## FINDINGS OF FACT

On November 30, 1995, Plaintiff filed a claim for long-term disability benefits under the Plan of Defendant Thompson and the Policy issued through Defendant Sun Life. Administrative Record ("AR"), p. 291; Docket No. 25, ¶ 1. Plaintiff stated that he was unable to perform certain of the duties of his occupation, parts and service representative. AR, p. 292.

The Administrative Record contains medical reports from four doctors concerning Plaintiff's condition. Those medical reports reveal the following information:

On November 20, 1992, Dr. David Gaw, an orthopaedic doctor, opined that Plaintiff had permanent restrictions on the constant use of both hands for grasping, twisting, etc. AR, p. 00263.

Dr. Allen F. Anderson examined Plaintiff on March 3, 1994, for pain in both of his hands. Dr. Anderson referred Plaintiff to Dr. Ben Alper. AR, p. 00277.[2]

Since March 21, 1994, Dr. Ben Alper has been Plaintiff's treating physician. AR, pp.

---

**1.** As discussed more fully below, the court should review de novo a denial of benefits unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Wilkins,* 150 F.3d at 613.

**2.** Later, on December 26, 1995, Dr. Anderson represented that he saw no reason why Plaintiff could not continue to work as a salesman. AR, p. 00277; *see also* AR, p. 00272.

00195 and 00251. On September 8, 1995, Dr. Alper represented that Plaintiff was unable to perform all of the material and substantial duties of his occupation either full-time or part-time. AR, pp. 00268 and 00295. Dr. Alper rated Plaintiff's physical impairment as a "slight limitation of functional capacity; capable of light work." *Id.*, pp. 00267 and 00294.

Dr. Alper opined, on December 27, 1995, that Plaintiff's primary area of disability was the musculoskeletal requirements. AR, p. 00289. Dr. Alper also noted that Plaintiff's limitations of fatigue and ill feeling, secondary symptoms of active rheumatoid disease, would further interfere with Plaintiff's attempts to function at his usual occupation. *Id.*

On February 28, 1996, Dr. Alper stated that Plaintiff was totally disabled from his job and any other work, with severe limitation of functional capacity; incapable of minimal (sedentary) activity. AR, p. 00252. Dr. Alper also stated that significant improvement was not anticipated. *Id.*

On March 18, 1996, Dr. Alper opined that Plaintiff was not able to tolerate the duties of his job for any significant amount of time. AR, p. 00232. In addition, on March 26, 1996, Dr. Alper stated: "I have reviewed the involvements required on his [Plaintiff's] previous job as a salesman and have confirmed that he is unable to tolerate the duties involved for any significant amount of time." AR, p. 00200. Dr. Alper noted that Plaintiff had taken medical leave on October 31, 1995. *Id.*

Dr. Alper opined on May 21, 1996, that Plaintiff was disabled because of rheumatoid disease. AR, p. 00195. In a letter dated October 3, 1996, Dr. Alper reiterated to Plaintiff's counsel that Plaintiff was unable to perform what was actually required in his job. AR, p. 00150.

On January 15, 1997, Dr. Alper stated that Plaintiff's degree of disability remained unchanged. AR, p. 00080. On January 29, 1997, Dr. Alper represented that Plaintiff's lifting and carrying abilities were affected by his impairment, such that he could lift and/or carry less than five pounds. AR, p. 00081.

He also stated that Plaintiff could stand and/or walk less than one hour without interruption. *Id.*

During their consideration of Plaintiff's disability claim, Defendants hired New England Independent Medical Exams, Inc. to review Plaintiff's medical records. AR, p. 00196. On May 16, 1996, Dr. George Cohen, who never examined Plaintiff, but merely reviewed Plaintiff's medical records, which he admitted were incomplete, stated that he was unable to make a diagnosis of rheumatoid arthritis from the available record, with any certainty. AR, p. 00197. Dr. Cohen also stated that he believed Plaintiff could perform the work of a salesman, based on the description that was available to him. *Id.* Dr. Cohen, recognizing the limits of his review, recommended an independent medical evaluation by a rheumatologist. *Id.*

On July 23, 1996, Plaintiff was examined by Dr. Deborah Doyle, again of New England Independent Medical Exams, Inc., at Defendants' request. AR, p. 00164. Dr. Doyle stated that she could not confirm the diagnosis of rheumatoid arthritis in Plaintiff. AR, p. 00167. She was not able to refute the diagnosis either. *Id.* She stated:

> I am not able to confirm the diagnosis of rheumatoid arthritis in Mr. Marchetti. It is not clinically active at this time, with no synovitis present in the joints and good range of motion. I am not able to refute the diagnosis at this time either, as Mr. Marchetti is on 10 milligrams of Prednisone and 15 milligrams of Methotrexate currently and these medications can effectively treat the disease. I personally know Dr. Alper and, while he is not board certified in rheumatology, he has extensive experience in treating rheumatoid arthritis. While I wonder if the diagnosis of fibromyalgia was entertained, it is difficult to second guess a diagnosis of two years ago, especially on major therapy.

AR, p. 00167. Dr. Doyle also concluded, based upon the job description provided by the employer, not by Plaintiff (AR, p. 00125): "Review of the essential functions of a sales person does not show any problems, except that he is required to lift 10–25 pounds." AR, p. 00167.

Also included in the Administrative Record is various information relevant to the job description and duties of Plaintiff's job. AR, pp. 00094, 00103–00110, 00118–00119, 00139–00149, 00151, 00253–00254 and 00298–00301. The parties disagree as to whether the job description provided by Defendant Thompson (*see* AR, pp. 00298–00301) is complete. The job description itself states that it is not intended to be all-inclusive. AR, pp. 00108 and 00300.

Plaintiff contends that his job required him to drive long distances and to do more physically strenuous tasks than Defendant Thompson admits. *See, e.g.,* AR, pp. 00109–00110 and 00118–00119. Plaintiff supports his contention with numerous letters and statements of co-workers and customers, which indicate that Plaintiff routinely delivered parts, diagnosed problems and helped repair equipment for customers, including "heavy-duty work," pulling wrenches, lifting heavy parts and rolling large cable. AR, pp. 00103–00104 and 00139–00145.

Defendant Thompson admits that Plaintiff did perform certain additional tasks, including delivery of parts that weighed more than ninety pounds, driving a company truck, and assisting less experienced mechanics in troubleshooting difficult pieces of equipment. AR, pp. 00149 and 00151. Thompson contends, however, that these tasks were above and beyond the duties that were expected and required of Plaintiff's position, *id.,* and that such tasks were not material to Plaintiff's position. AR, p. 00094. Yet, even the employer's job description states that Plaintiff is required to lift 10–15 pounds. AR, pp. 00105–00106 and 00133–00134. Also, in the "Long Term Disability Claim Statement" submitted by Plaintiff's employer to Defendant Sun Life, the employer represented that in a typical working day, Plaintiff must occasionally lift and carry 50 pounds. AR, p. 00321.

Defendants denied Plaintiff's claim for disability benefits on May 17, 1996. AR, p. 00205. That denial states:

Based on a review of the Medical Record Report of an Independent Medical Examiner, a Rheumatologist, it has been determined that your disability does not meet the terms of the Policy. Specifically, you are not prevented from performing the material duties of your regular occupation as of November 1, 1995. According to the Review, the doctor was unable to make a diagnosis with absolute certainty for the condition for which Dr. Alper has been treating you for the past two years. In the medical opinion of the Independent Medical Examiner, you could perform the work of a salesman as described by your employer. We are therefore unable to provide any benefits for this claim as you are not totally disabled as defined by the Policy.

AR, p. 00205. The administrator's denial does not mention either the reports of the treating physician or the statements of Plaintiff and his co-workers and customers regarding his job duties.

Following Plaintiff's appeal of that denial, Defendants again denied his claim, stating: "As there is no evidence to support your disability from your own occupation, we have no alternative but to reaffirm our previous denial." AR, p. 00137. This denial references the report of Dr. Doyle, in which she stated that she could not confirm or refute the diagnosis of rheumatoid arthritis. *Id.* The denial also references again the Medical Record Review of Dr. Cohen, in which he stated: "In my medical opinion, I believe that the claimant could perform the work of a salesman based on the description that is available." *Id.* Again, Defendants' denial does not mention at all the reports of Dr. Alper, Plaintiff's treating physician, or the statements of his coworkers and customers concerning his job description. *Id.*

Finally, following Plaintiff's appeal to the final administrative level, Defendants again denied Plaintiff's claim, stating: "From the medical information received, there would not be a disability from engaging in the duties of this occupation and as a result, we remain unable to consider this claim. The restrictions placed on Marchetti, of no repetitive lifting, are not included in the regular duties of his occupation." AR, p. 00092. Defendants reference the job description provided by Defendant Thompson, finding that it reflects an accurate description of the ma-

terial and substantial duties of the Plaintiff's occupation, without any explanation as to the disregard of Plaintiff's statement and those of his coworkers and customers regarding his job duties. *Id.*, pp. 00091–00092. Once again, Defendants' denial fails even to mention the reports of the treating physician. *Id.*

## CONCLUSIONS OF LAW

### STANDARD OF REVIEW

 Plaintiff asserts that the Court should employ a "de novo" standard of review, while Defendants argue that the "arbitrary and capricious" standard should apply. The parties agree that a de novo standard is appropriate "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins,* 150 F.3d at 613 (citing *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). The parties disagree as to whether this Plan gives such discretionary authority to Defendants.

 The Court finds that a grant of discretion is found in the following language from the Plan's General Provisions: "We must receive written proof of claim within certain time limits except for those arising from the death of an insured.... The proof, which must be satisfactory to us, is to be given to us at our Office.... We may require proof in connection with the terms or benefits of this Policy. If proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances." A R, p. 00051. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983–84 (6th Cir.1991) (grant of discretion in the language "on the basis of medical evidence satisfactory to the Insurance Company"); *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380–81 (6th Cir.1996) (grant of discretion in the language "satisfactory proof of Total Disability to us").

The Sixth Circuit recently held the following language to adequately grant discretion to the Plan Administrator in an ERISA case: "Written proof of total disability must be furnished to [Aetna] within ninety days after the expiration of the [first twelve months of disability]. Subsequent written proof of the continuance of such disability must be furnished to [Aetna] at such intervals as [Aetna] may reasonably require.... [Aetna] shall have the right to require as part of the proof of claim satisfactory evidence ... that [the claimant] has furnished all required proofs for such benefits." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555–57 (6th Cir.1998).

The Court finds, based upon this precedent, that the Plan at issue herein grants discretionary authority to the Plan Administrator to determine eligibility for benefits.

Plaintiff argues that a de novo standard is appropriate because the Plan does not confer upon the Plan Administrator the discretion to interpret or construe plan terms. The test, however, is discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan, not both. *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57.

Plaintiff contends that the de novo standard should apply because of the inherent conflict of interest in Defendants' decision-making. It is true that a genuine conflict exists when, as here, the decision maker, in determining whether benefits are to be paid out under a plan, would have a natural reluctance to grant requests for benefits because those benefits would be paid out of its own assets. *See Best v. Nissan Motor Corp.,* 973 F.Supp. 770, 775 (M.D.Tenn.1997); *Miller,* 925 F.2d at 984–86. Such a conflict of interest does not change the standard of review, however. As this Court has noted, most of the cases in which the court has addressed the issue consider the administrator's conflict of interest as merely a factor to be considered in reviewing the administrator's decision. *Best,* 973 F.Supp. at 776 (and cases cited therein); *see also Miller,* 925 F.2d at 984 ("the arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest"). The Court has considered this inherent conflict of interest as a factor in deciding whether the Defendants' decision was arbitrary and capricious.

Plaintiff also argues that the de novo standard should apply because he was never given a copy of the Policy during the administrator's review process. The Court does not understand how a failure to provide a copy of the Policy would change the legal standard of review. If Defendants in fact failed to provide information required by ERISA or under the Policy, Plaintiff might have a claim for such failure. In addition, Plaintiff could not be bound by terms of which he had no notice (*see Edwards v. State Farm Mut. Automobile Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988)). But, failure to provide a copy of the Policy does not change this Court's standard of review.

Finally, Plaintiff contends that a de novo standard should apply because neither the Policy nor the Summary Plan Description ("SPD") contains written administrative review procedures. The case cited by Plaintiff for this argument is *Dishman v. UNUM Life Ins. Co. of America,* 1997 WL 906146 (C.D.Cal. May 9, 1997). In *Dishman,* there was no claims procedure at all and, therefore, no adequate administrative record to review. *Id.,* p. *10. Therefore, the court held that a de novo standard of review was appropriate. *Id.*

Here, there is an administrative record. Plaintiff was given notice of the administrative review procedures. *See* AR, pp. 137 and 205. Plaintiff has not alleged that he was damaged by any failure to communicate the review procedures in the Policy or SPD. The Court finds that any alleged failure to include written administrative review procedures in the Policy and SPD does not change the Court's standard of review.

For all these reasons, the Court has reviewed the administrator's denial of benefits in this case pursuant to an "arbitrary and capricious" standard.[3] An ERISA benefit plan administrator's decision on eligibility for benefits is not arbitrary and capricious if it is "rational in light of the plan's provisions." *Miller,* 925 F.2d at 984; *Yeager,* 88 F.3d at 381.

In applying the arbitrary and capricious standard, the Sixth Circuit has stated: "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).

An arbitrary and capricious standard is highly deferential and requires that the administrator's decision be upheld as long as it is rational in light of the plan's provision, as well as reasonable with no abuse of discretion. *Tavares v. Unum Corp.,* 17 F.Supp.2d 69, 75 (D.R.I.1998). Before concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence. *Wahlin v. Sears, Roebuck & Co.,* 78 F.3d 1232, 1235 (7th Cir. 1996).

## LIABILITY OF DEFENDANT SUN LIFE

The Court finds that the administrator's decision to deny benefits in this case was arbitrary and capricious because it was not supported by the evidence. Plaintiff presented substantial proof from an examining and treating physician, Dr. Alper, who had treated Plaintiff since March 21, 1994, that Plaintiff was totally disabled. Defendants' medical proof does not rebut that evidence.

Defendants first presented a report from Dr. George Cohen, a physician who never saw or examined the Plaintiff but merely reviewed some of Plaintiff's medical records. Dr. Cohen admitted that the medical record he reviewed was not complete. AR, p. 00197. He also "strongly recommend[ed]" that the Plaintiff be examined by a rheumatologist to determine whether he is disabled. *Id.* The Court finds that Dr. Cohen's opinion, by his own admissions, has little, if any, probative value.

Secondly, Defendants presented the report of Dr. Deborah Doyle, who examined Plain-

---

**3.** As noted, the inherent conflict of interest existing in this case has been weighed as a factor in reviewing Defendants' decision to deny benefits.

tiff one time, at Defendants' request. As noted above, Dr. Doyle could not confirm the diagnosis of rheumatoid arthritis, but she also could not refute it. AR, p. 00167. For this reason, the Court finds that Dr. Doyle's opinion has little probative value as well. Although, unlike Dr. Cohen, Dr. Doyle did actually examine the Plaintiff once, she could not refute the diagnosis of his longtime treating physician. Since she could not refute the treating physician's report, she also, logically, could not refute Dr. Alper's opinion that Plaintiff could no longer perform the work of his job.

 As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Palmer v. University Medical Group*, 994 F.Supp. 1221, 1234 (D.Or.1998). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* The Court finds that Defendants have failed to articulate adequate grounds for discounting the opinions of Plaintiff's examining and treating physician. In addition, as in *Palmer*, there is no evidence in this record to significantly impeach either the credentials of Dr. Alper or his methods.

Furthermore, the Court is influenced by the inherent conflict of interest in Defen-

dants' decision-making process.[4] Defendants, for example, have presented no evidence to show that their choice of and payment to a company called "New England Independent Medical Exams, Inc." for Plaintiff's examination was truly "independent."[5] There is no significant credible affirmative proof in the record that Sun Life and New England Independent Medical Exams, Inc., or Dr. Doyle, are independent.[6]

The Court finds that the Defendants erroneously discounted the opinions of Plaintiff's treating physician in favor of the opinion of an alleged "independent" examiner, who saw Plaintiff only once and could not confirm or refute the treating physician's findings. *See* AR, p. 00153, which indicates that the decision is "[b]ased upon a review of the Medical Record Report of an Independent Medical Examiner."

The Court also notes that Defendants discounted the substantial evidence[7] of Plaintiff's job duties presented by those in a position to know—Plaintiff, his coworkers and his customers. In much the same way as they failed to explain their discounting of the treating physician's opinions, Defendants have failed to articulate an adequate or reasonable basis for discounting the job descrip-

4. The Court finds it interesting that, during their decision-making, Defendants hired an investigative firm to investigate Plaintiff through an area check of his residence and a check in the Rutherford County Property Assessor's Office and County Clerk's Office. *See* AR, pp. 00233 and 00223–00230. It is unclear how residential real property tax records could shed any light on Plaintiff's medical condition in this case. In any event, such investigations are not the usual and customary acts of a detached and impartial decisionmaker. Such investigations are indicia of advocacy, rather than neutrality.

5. It is unclear to the Court, for example, why the Administrative Record includes a document with the apparent letterhead of both Defendant Sun Life and New England Independent Medical Exams, Inc. on the same page. *See* AR, p. 00187. Shared letterhead weighs against a finding of independence. It is also interesting to the Court that both Dr. Cohen and Dr. Doyle work for the same company, New England Independent Medical Exams, Inc. In addition, although Dr. Doyle is in Nashville (AR, p. 00186), her report to Defendant Sun Life is on the letterhead of New

England Independent Medical Exams, Inc., a Quincy, Massachusetts company. AR, p. 00164.

6. The administrative record contains no evidence that typically would be forthcoming from traditional witness examination to show independence. Why were these healthcare providers selected by Defendants? Is there an on-going retainer or business relationship between Defendants and them? What is the compensation arrangement? Do the healthcare providers testify for employees as well as employers? In ERISA cases, like all cases, the issue of whether the healthcare providers are truly independent is important, particularly where, as here, there is an inherent conflict of interest. In this case, the record is effectively silent.

7. Defendants' assertion that the letters from Plaintiff's coworkers are irrelevant because they are "opinion vs. facts" is incorrect and further evidence of the arbitrary nature of Defendants' decision. *See* AR, p. 00126.

tions set forth by Plaintiff's evidence[8] in favor of the job description of the employer, which has a financial stake in the result.[9]

The administrator's decision, for the reasons described above, was unsupported by the evidence. The administrator failed to consider all of the relevant evidence and the relevant factors in the record. Plaintiff presented affirmative medical proof of his disability, which Defendants did not rebut. Plaintiff presented substantial, credible proof of the actual duties of his job, which Defendants summarily discounted in favor of the employer's description. Therefore, the denial was not reasonable or rational in light of the record. It was arbitrary and capricious. In the words of another district court, the evidence was not "adequate to support the conclusion reached by the decisionmaker." *Maida v. Life Ins. Co. of North Am.*, 949 F.Supp. 1087, 1091 (S.D.N.Y.1997).

Accordingly, Plaintiff is entitled to judgment against Defendant Sun Life on Plaintiff's ERISA claim, and the decision of the administrator is REVERSED.

## LIABILITY OF DEFENDANT MARINO

In moving for summary judgment, Defendant Marino relies solely upon facts from outside the administrative record—specifically, her own Affidavit filed in support of summary judgment in this Court. *See* Docket No. 21; Docket No. 22, pp. 14–15; Docket No. 23, p. 9, ¶ 16. Defendant has not pointed to any portion of the administrative record in support of her argument. Defendant has also not directed the Court to any authority permitting the Court to go outside the administrative record on this issue.

Since the Court can consider only the administrative record filed with the Court, Defendant Marino's Motion for Summary Judgment is DENIED.

## CONCLUSION

For the above reasons, judgment is entered for the Plaintiff on his ERISA claims, and the decision of the administrator is REVERSED.

Plaintiff's Motion for Summary Judgment (Docket No. 15) is DENIED as moot, and Defendants' Motion for Summary Judgment (Docket No. 20) is DENIED.

Plaintiff's remaining FMLA claims are referred to the Magistrate Judge for further customized case management.

IT IS SO ORDERED.

---

8. Plaintiff even requested that Defendants interview his direct supervisor and the president of the division for which Plaintiff worked. AR, pp. 00113–00114. There is no evidence in the record that Defendants even attempted to get such information, much less fairly considered it.

9. There is no significant credible affirmative proof in the record on when and why the employer's job description was written and by whom. The administrative record, again, contains no evidence that typically would be forthcoming from traditional witness examination on this issue. The record, in this case, is effectively silent.