**Madge W. FRANKLIN and Madge W. Franklin, Executrix of William Franklin Estate**

v.

**Barbara W. GIBSON and TIAA–CREF.**

No. 3:97–1280.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 8, 1999.

Samuel D. Payne, J. Allen Reynolds, III, Richard Arthur Jones, Evans, Jones & Reynolds, Nashville, TN, for Madge W. Franklin.

Dwayne William Barrett, Miller, Martin & Trabue, Nashville, TN, Dianna Baker Shew, Farris, Warfield & Kanaday, Nashville, TN, for Barbara W. Gibson.

Darrell Gene Townsend, Howell & Fisher, Nashville, TN, for Teachers Insurance and Annuity Association–College Retirement Equities Fund.

*MEMORANDUM*

TRAUGER, District Judge.

## I. Introduction

Pending before the court are motions for summary judgment filed by the defendant (Docket No. 35) and the plaintiff (Docket No. 31) and the plaintiff's motion to amend the complaint (Docket No. 39). For the reasons discussed herein, all motions will be denied and the court will enter a judgment in favor of the plaintiff based on a review of the administrative record.

## II. Facts

Bill Franklin, a college administrator, was married to his first wife, Barbara, in 1978 when he opened his TIAA/CREF retirement account. He named Barbara as the beneficiary of the TIAA account and the CREF account on a single page that merely asked for the name and birth date of the beneficiary. Two years later, the Franklins were divorced. The marital dissolution agreement provided that Barbara would receive the family house and that Mr. Franklin would pay jointly incurred debts and purchase a $100,000 life insurance policy naming Barbara as the beneficiary. The small TIAA/CREF accounts were not mentioned in the agreement, although the settlement agreement stated that it was to be a final settlement of all matters between the two.

Barbara Franklin remarried within a year of the divorce, changing her name to Barbara Gibson. Mr. Franklin married

his second wife, Madge, shortly after that. Three days after he returned from his honeymoon in June 1981, Mr. Franklin filed a form to change his beneficiary on his retirement account to his new wife. He filled out the single-page form but did not include the numbers of the various accounts in the spaces provided to indicate which accounts the newly named beneficiary would receive.[1] Someone apparently filled in the TIAA number for him but left the CREF slot blank.[2]

Bill Franklin was killed in a car accident on October 11, 1996, and all of the proceeds of his various life insurance policies and retirement accounts were sent to Madge Franklin, except for the CREF account, which was the second-largest asset in Mr. Franklin's estate. When CREF administrators responsible for paying out benefits discovered that the CREF certificate number was not filled in on the change of beneficiary form, they decided that Mrs. Gibson, the original beneficiary, would be entitled to half of that account and Mrs. Franklin to the other half.[3]

Madge Franklin received a one-sentence letter informing her of the administrator's decision; no reason for the decision was given. She appealed and later received another letter, this time two sentences long, stating that administrators had reviewed the record and denied her appeal. Again, no reason was given for the decision.

## III. Legal analysis

### A. Standard of review

■■■ Summary judgment procedures are inappropriate for ERISA actions involving disputed benefit awards and should not be used in their disposition. *Wilkins*

v. *Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir.1998) (Gilman, J., concurring). Instead, the court will treat the parties' summary judgment motions as motions for judgment, conducting a review based solely upon the administrative record. *Marchetti v. Sun Life Assurance Co. of Canada*, 1998 WL 907987 (M.D.Tenn. 1998).

■■■ The record is to be reviewed de novo unless the benefit plan gives the administrator authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A plan that gives authority to an administrator in either of these areas will be reviewed instead, under an arbitrary and capricious standard. If a plan gives discretion to an administrator who is operating under a conflict of interest, that conflict must be weighed as a "factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

In this case the plan gave the TIAA–CREF administrator "such powers and duties as may be necessary to discharge his duties hereunder, including, but not by way of limitation, the following: a) To enroll participants, decide all questions of eligibility and construe the plan ..." Therefore the court will apply the arbitrary and capricious standard to a review of the administrative record of this case.

■■■ The arbitrary and capricious standard is used to avoid excessive interference with the administration of a plan *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). This is the most deferential of standards and an administrator's decision will not be overturned if it is

---

**1.** Many of these facts are included in the undisputed facts submitted by the plaintiff, to which the defendant did not respond. Because they were undisputed, the court will accept the facts as true.

**2.** The administrative record contains the report of a handwriting expert that concludes

that the numbers on the form were not written by Mr. Franklin.

**3.** Ironically, it was Mrs. Franklin who helped find Mrs. Gibson, whose married name and address were not in the CREF files.

"rational in light of the plan's provisions."
*Id.*

## B. Administrative review

In cases that have challenged awarding benefits to former spouses even though the deceased had indicated an intention to change the beneficiary, the Sixth Circuit has said that courts should rely on the designation on the face of plan documents to determine the intended beneficiary. *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990). This principle dates back to the pre-ERISA case *Magruder v. Northwestern Mutual Life Ins.,* 512 F.2d 507 (6th Cir.1975), and has been carried forward to ERISA-controlled cases in *McMillan; Aetna Life Ins. Co. v. Weatherford,* 924 F.2d 1057, (6th Cir.1991); *Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126, (6th Cir.1996); and most recently, *Hendon v. E.I. Dupont De Nemours,* 145 F.3d 1331 (6th Cir.1998).

In *Magruder,* Milton Magruder named his wife Jeanne as beneficiary on August 15, 1953. After a divorce, he executed a change of beneficiary form naming his children as beneficiaries. On August 21, 1971, Magruder wrote to the insurance company stating that he had remarried, wanted to change his beneficiary to his new wife, Claudia, and requested a form to do so. He executed, but never mailed, the change of beneficiary form to the company. On May 2, 1972, Claudia Magruder filed for divorce and, while that was pending, Magruder died.

The Sixth Circuit ruled that, "Mrs. Claudia E. Magruder's claim to the insurance proceeds must be founded either on actual or substantial compliance with the policy provisions governing the change of beneficiary." *Magruder* 512 F.2d at 508. The court found that she could not meet her duty to show that Magruder had "done all that he could to comply with the provisions of the policy." *Id.,* at 509.

In *McMillan,* Dr. Norman Parrott's ex-wife, Barbara, and widow, Claudia, and children from a third marriage, claimed rights in an ERISA plan when Parrott died on August 12, 1985, less than 24 hours after he married Claudia. When the plans were set up, Parrott was married to Barbara and named her as his beneficiary with his son as a contingent beneficiary. He never filed a change of beneficiary. The divorce settlement with Barbara states that each spouse relinquished "any and all" claims against the other, and based on that, the district court found that Barbara had waived her right to the proceeds of the plan. The Sixth Circuit found, however, that ERISA pre-empted the state law that would have nullified the designated beneficiary on the face of the plan documents. If Parrott had wanted to change his designated beneficiary, he could have done it during the four years between the divorce and his death. He did not do so, and the unambiguous beneficiary designation form on file at the time of his death controlled, the court said. *McMillan,* 913 F.2d at 312.

In *Pressley,* Alvin Pressley participated in a company life insurance plan and designated his wife Barbara as beneficiary on March 5, 1979. They were divorced in 1984, and Alvin died in 1993 without changing the beneficiary. The Sixth Circuit found that the documents on file controlled, state law claims were pre-empted by ERISA, and there was no effective waiver in their divorce settlement.

Finally, in *Hendon,* Martha Mayberry and Jake Fuller divorced on June 6, 1994, with a divorce decree that contained a general waiver provision. Mayberry died on July 17, 1994, and the insurance company paid the proceeds of the policy to Fuller because Mayberry had not completed a change of beneficiary form. The administrator of Mayberry's estate filed state law claims for breach of contract and conversion against the plan administrator and Fuller. The Sixth Circuit found that ERISA, not a state law claim based on the divorce decree, controlled, and that, because Mayberry had not changed her ben-

eficiary, the administrator had properly paid the funds to Fuller. The administrator followed the clear direction on the face of the plan documents.

While all of these cases have similar factual scenarios, the law has adapted since *Magruder*, taking into account changes brought on by ERISA interpretation, beginning with *Firestone*. In *Firestone* the Supreme Court instructed the lower courts "to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone*, 489 U.S. at 110, 109 S.Ct. 948. To do that, the Supreme Court looked to trust law in stating that, "A trustee may be given power to construe *disputed* or doubtful terms and in such circumstances the trustee's interpretation will not be disturbed if reasonable." *Id.* at 111, 109 S.Ct. 948. (emphasis added.) The Court also noted that under the Restatement (Second) of Trusts, the terms of trust documents "are 'determined by the provisions of the instrument *as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.*'" *Id.* at 112, 109 S.Ct. 948 (quoting Restatement § 4, Comment d (1959)) (emphasis added).

But *Firestone* represents only a starting point for the evolution of ERISA law. The most recent statement by the Sixth Circuit on interpretation of ERISA beneficiaries comes from *Hendon*, an unpublished per curiam opinion in which the court said:

> In order to ascertain the applicable law, we 'look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law.' In contrast to several other circuits, we have uniformly held that ERISA itself supplies the rule of law for determining beneficiaries. This view relies on the ERISA provision requiring a plan administrator to discharge his or her duties 'in accordance with the documents and instruments governing the plan.'

*Hendon v. DuPont*, 145 F.3d 1331, 1333 (6th Cir.1998) (internal citation omitted).

In the line of cases leading up to *Hendon*, the court considered whether former spouses should be awarded death benefits in spite of factual scenarios that cast doubt on the decedent's intent. And in each of them the court said to look only to the face of the plan document. But in these cases the policyholders never submitted any documents to change their beneficiaries. In *Hendon* the court noted, "In this case there is no dispute that Mayberry named Fuller as her beneficiary and did not change the designation, as she could have, after the divorce." *Id.* at *6. Also in each of these cases, the Sixth Circuit made it clear that mere documention of outside agreements should not be used to usurp the decedent's beneficiary designation. "Such a holding also allows the parties to be certain of their rights and obligations. It is for this reason that ERISA plans are to be administered according to their controlling documents." *Id.*

The parties here agree that, if the beneficiary designation is ambiguous, the administrator would be free to consider extrinsic evidence to resolve the ambiguity. They disagree on whether there is any ambiguity within the document.

■■■■ The defendant asserts that any challenge to a plan document must arise from an internal ambiguity in the printed words on the form before any extrinsic evidence may be considered by the administrator. The plaintiff argues that two printed provisions on the form are contradictory, thereby making the form ambiguous even by the defendant's analysis. A sentence in bold at the top of the form states, "I request that all prior designations of beneficiary and methods of payment be revoked and that any benefits due by reason of my death be payable to the beneficiaries named below." Nearly three-quarters of the way down the page, this language appears: "This Designation

of Beneficiary is effective for each annuity or life insurance contract listed by number on it, if the Designation is in form satisfactory to TIAA–CREF and if it is recorded by TIAA–CREF for that contract." Plaintiff argues that a plan holder could interpret the first statement to mean that any person whose name was written in the one space provided would automatically become the beneficiary for all three funds listed at the top of the form. Because the next statement limits the effectiveness of the beneficiary designation to the accounts listed by number, it is contradictory. Whether these statements create an ambiguity is a matter of law. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th Cir.1994). "The language is ambiguous if it is subject to two reasonable interpretations." *Id.* The court finds that these two printed provisions do not create an ambiguity. Anyone reading the entire form could not reasonably believe that all three accounts would be transferred to a new beneficiary unless all three numbers were filled in in the boxes at the top of the form.

 But the plaintiff here makes a second argument that distinguishes the facts of this case from the other Sixth Circuit cases dealing with this issue. Mrs. Franklin has challenged the accuracy of the information filled in on the form. None of the information on any of the forms on file with the plan administrator in any of the above-discussed cases was ever challenged. The prior cases stand for the principle of looking first to ERISA, which says an administrator "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104. The defendant argues that this is a definitive statement by the Sixth Circuit that no doctrines of state law or federal common law may be used to determine competing claims for benefits. But this would be contrary to the direction of the Supreme Court in *Firestone*, which

stated that the courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone*, 489 U.S. at 110, 109 S.Ct. 948. In fact, the Sixth Circuit has apparently not been presented with situations in which the information filled in on the beneficiary form on file is disputed, and there is no mention in ERISA of how a plan administrator should deal with fraud, forgery or mistake in a change of beneficiary form. Under the black letter trust law the Supreme Court relied upon in *Firestone*, 489 U.S. at 112, 109 S.Ct. 948, an administrator faced with allegations of fraud, forgery or mistake that goes to the integrity of a plan document should look at the provisions of the plan as interpreted in light of all the circumstances and evidence of the intention of the deceased.

In the Restatement of Trusts, nearly every reference excluding extrinsic evidence or discussing the parol evidence rule includes the exceptions of "fraud, duress, undue influence or mistake." In explaining the parol evidence rule and its relation to trust law the Restatement states:

> Under the parol evidence rule, where the manifestation of the settlor's intention is integrated in a writing, that is, if a written instrument is adopted by the settlor as the complete expression of the settlor's intention, extrinsic evidence is not admissible to contradict or vary the terms of that instrument in the absence of fraud, duress, undue influence, mistake, or other ground for reformation or rescission.

Restatement (Third) of Trusts § 21, Comment a (1996).

 In a case in which a meritorious challenge to the accuracy of the information written in on a change of beneficiary form has been made, be it an allegation that a wrong number is entered in one of the boxes, the form was forged, or, as in this case, a number was mistakenly omitted by someone, the true beneficiary cannot be gleaned from the form itself. In these situations, an administrator has an

obligation to look beyond the potentially defective document. To determine whether a signature is forged, the administrator would be forced to look at other copies of the decedent's signature in the record. To determine whether the change of beneficiary form was fraudulently submitted, the administrator would be forced to look at the circumstances surrounding its submission.

In this case, there is overwhelming evidence in the administrative record (Docket No. 24, Submissions on Behalf of Madge Franklin, "A.R.") that the change of beneficiary form contained an error. A layman could tell that the numbers in the boxes at the top of the form were filled in by someone other than Mr. Franklin, and Mrs. Franklin submitted a handwriting analysis verifying that. (A.R., Tab 6, Tab 8) Much of the correspondence that Mr. Franklin received from TIAA–CREF referred to the plans as a single entity and Mr. Franklin referred to them as a single benefit as well. (A.R., Exhibit E, Tabs 13, 14, 19, 20, 21, 22) Mr. Franklin prepared a personal financial statement for NationsBank in July 1994 in which he specifically stated that his wife was to be the beneficiary of his TIAA–CREF account. (A.R., Exhibit E) Mr. Franklin told his wife and children that all of his assets would pass to Mrs. Franklin when he died and that, if anything happened to both of them, it would pass to their two sons. (A.R., Tab 2, ¶ 11; Tab 10, ¶¶ 9–11) Mr. Franklin told his wife that the TIAA–CREF accounts would be enough to pay off the outstanding mortgage on the house. (A.R., Tab 2, ¶ 15) Early in their marriage, Mr. Franklin expressed bitterness over the financial burdens imposed on their lives by the divorce settlement with Mrs. Gibson. (A.R., Tab 2, ¶¶ 6, 7) Mr. Franklin had little or no contact with Mrs. Gibson in his sixteen years of marriage to Madge Franklin. (A.R., Tab 2, ¶ 9; Tab 10, ¶ 6) Mr. Franklin prepared a list of family members, friends and business associates who should be contacted when he died; Mrs. Gibson is not on that list. (A.R., Tab 2, ¶ 13)

The intent of the deceased could not be more clear. The administrative record makes clear that Mr. Franklin simply made a mistake in believing that his change of beneficiary form transferred the proceeds of all TIAA–CREF accounts to his wife, Madge Franklin. Barbara Gibson had an opportunity to counter this evidence at the administrative level, but she did not.

The record is bereft of any indication that the plan administrator considered any of the evidence submitted. The initial decision and the decision on Mrs. Franklin's appeal give no reasons for the administrator's determination. This lack of an explanation for the decision is a direct violation of ERISA, which states:

> In accordance with regulations of the Secretary, every employee benefit plan shall: (1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied *setting forth the specific reasons for such denial,* written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (emphasis added).

The court finds that for an administrator to ignore the undisputed evidence in the administrative record and give no reason for a determination that goes counter to it is arbitrary and capricious. Based upon the facts presented to the administrator, the court concludes that Madge Franklin is the sole beneficiary of Mr. Franklin's account and that Mrs. Gibson has no right to receive any of those proceeds.

The court need not consider Madge Franklin's remaining arguments. The plaintiff's motion to amend the complaint and the defendant's motion for summary judgment are denied as moot.

An appropriate order will enter.

598

*ORDER*

For the reasons stated in the accompanying Memorandum, it is ordered that the defendant's and the plaintiff's motions for summary judgment and the plaintiff's motion to amend the complaint are **DENIED.** Judgment in favor of the plaintiff based on a review of the administrative record is **GRANTED.**