Helmut M. DIRNBERGER, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, Defendant.

No. 01–2945 M1/BRE.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 31, 2002.

Richard L. Rikard, Esq., Rikard & Dobson, Germantown, for Helmut M. Dirnberger, plaintiff.

Jennifer M. Eberle, Hale Headrick Dewey Wolf Golwen Thornton & Chance, S. Russell Headrick, Esq., Hale Headrick Dewey Wolf Golwen Thornton & Chance,

Memphis, for Unum Life Insurance Company of America, defendant.

## ORDER REVERSING DEFENDANT'S DENIAL OF PLAINTIFF'S LONG TERM DISABILITY BENEFITS

McCALLA, District Judge.

Before the Court is Plaintiff's Motion for Entry of Judgment Reversing Defendant's Denial of Long Term Disability Benefits, filed March 15, 2002. Defendant responded in opposition on May 17, 2002. For the following reasons, the Court GRANTS Plaintiff's Motion for Entry of Judgment Reversing Defendant's Denial of Long Term Disability Benefits.

### I. Facts

Plaintiff Helmut M. Dirnberger was hired by Carlin Contracting Company, Inc. ("Carlin") in Waterford, Connecticut on May 2, 1988 as company controller. On May 1, 1998 he was provided with a long term disability plan that set forth the terms and conditions upon which he would qualify for long term disability benefits under Group Policy No. 00526445 001 ("the Policy"), administered by Defendant Unum Life Insurance Company of America ("Unum").

Plaintiff was diagnosed with andenocarcinoma of the prostate gland on November 22, 1999. He underwent brachytherapy on May 16, 2000 for his prostate cancer, after which he began to perform some work from his home. Plaintiff's last day of employment with Carlin was July 11, 2000.

Plaintiff filed a claim with Unum for long term disability benefits on July 29, 2000, at which point he began providing Defendant with medical records in support of his claim. These materials comprise the majority of the administrative record (AR). In making its decision, Defendant reviewed materials from December 1994 (AR at UACL00039) through March 8, 2001 (AR at UACL00321).

On July 30, 2000, Dr. Paul H. Deutsch, an internist who treated Plaintiff for diabetes at William Backus Hospital, in Norwich, Connecticut, filed a "Long Term Disability Claim Physician's Statement" with Unum. (AR at UACL00012–00008). Dr. Deutsch recorded Plaintiff's primary diagnosis as angina and prostate cancer, listing his restrictions as "no exertion" and his prognosis as "permanent disabling." (AR at UACL00008) A letter dated October 12, 2000, from Dr. James Healy, Plaintiff's cardiologist in Connecticut, indicated that he also considered Plaintiff "permanently disabled." (AR at UACL00172).

On September 20, 2000, UNUM made a clinical referral of Plaintiff's claim to Dennis Caron, R.N., who determined after a review of the records that the restrictions and limitations were only supported through six weeks of cancer treatment. (AR at UACL00036). Unum made a second referral on October 25, 2000, to Dr. F.A. Bellino, who determined that Plaintiff had the capacity for sedentary activity. (AR at UACL00119).

Relying on these two opinions, Defendant denied Plaintiff's claim for disability benefits on October 26, 2000, finding that Plaintiff was not disabled as defined under the Policy and that the information Plaintiff had provided at that point failed to demonstrate that the alleged disability prevented Plaintiff from performing his regular occupation of controller. (AR at UACL00190).

Under the Policy, a claimant is considered disabled when the Defendant determines that:

— you are limited from performing the material and substantial duties of your regular occupation due to sickness or injury; and

— you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when UNUM determines due to the same sickness or injury, you are unable to perform the duties of any gainful occupations which you are reasonably fitted by education, training or experience.

(AR at UACL00353).

The Policy defines "regular occupation" as the "occupation you are routinely performing when your disability begins" and further provides "UNUM will look at your occupation as it is normally performed in the national economy instead of how the work tasks are performed for a specific employer or at a specific location." (AR at UACL00353).

On September 19, 2000, Carol Fletcher, a vocational expert, researched Plaintiff's occupation description. According to her research, the occupation of controller included the duties of "directing financial activities of organization or subdivision of organization." (AR at UACL00035). She further determined the strength activity of the occupation of controller was classified as sedentary and included typical physical demands, such as frequent reaching and handling and occasional fingering. (Id.).

Plaintiff appealed Defendant's initial denial of benefits on January 19, 2001. (AR at UACL00186–185). In his appeal, Plaintiff pointed out that he had other medical conditions in addition to his prostate cancer, including peripheral vascular disease, iliac artery stenosis, arteriosclerosis, Leriche's syndrome, diabetes, hyperlipidemia, anemia and sleep apnea. (Id.). These conditions, he asserted, coupled with his coronary artery disease and prostate cancer precluded him from any gainful employment. (Id.).

Plaintiff has a long history of health problems in addition to his prostate cancer, including coronary disease and diabetes. In 1995, Dr. Healy, who treated Plaintiff from 1994 to 2000, performed cardiac catheterization at Lawrence Memorial Hospital in Connecticut after finding an inferior infarct and a component of ischemia. The catheterization revealed diffuse disease of the right coronary artery, with diffuse irregularities in his left-sided system with severe obstructive lesions. (AR at UACL00048–45). On April 23, 1996, a biopsy revealed that Plaintiff had chronic inflammatory and mild fibrosis of the right lung lobe, along with urosepsis and diabetes out of control. (AR at UACL00287–286). On October 21, 1997, Plaintiff was diagnosed with sleep apnea. (AR at UACL00215). After admittance to Lawrence Memorial Hospital with complaints of chest pain and heavy sweating on August 25, 1998, nuclear imaging revealed evidence of an inferior infarct, as well as a moderate component of ischemia. (AR at UACL00149–147). As a result, Dr. Healy performed another cardiac catheterization, which revealed intimal irregularities in the left main coronary artery and 100% occlusion of the right coronary artery. (Id.).

During a surgical evaluation performed on April 28, 1999, Dr. Bell, Plaintiff's treating cardiovascular physician, stated that it was clear to him that Plaintiff "does indeed have perhaps early symptomatology of Leriche's syndrome." (AR at UACL106). This was followed by another determination on May 20, 1999 by Dr. Bell that Plaintiff had occult disease in his right iliac system. (AR at UACL00103). On July 22, 2000, Plaintiff was admitted to Backus Hospital and was diagnosed with sepsis, uncontrolled diabetes mellitus, carcinoma of the prostate, coronary artery disease, peripheral vascular disease, hypertension, and hyperlidemia. (AR at UACL00131–128).

Dr. Mark C. Vlasak began treating Plaintiff in Memphis on November 28, 2000. (AR at UACL00270). Plaintiff went to the emergency room at Methodist Hospital with complaints of neck and chest tightness on December 20, 2000. (AR at UACL00244–222). Dr. Vlasak diagnosed him with angina pectoris, status post myocardial infarction and angioplasty, sleep apenea, hypercholesterolemia, non-insulin dependent diabetes mellitus, major depression, and prostate cancer. (AR at UACL00234–233). A cardiac catheterization conducted on December 21, 2000 by Dr. Michael McDonald at St. Francis Hospital showed several irregularities, including "major diagonal ostial 95% lesion." (AR at UACL00221–220).

At the time of the January 2001 appeal, Plaintiff submitted medical records from Dr. Vlasak, and letters from Drs. Vlasak and Healy, "both opining that Plaintiff is permanently and totally disabled." (AR at UACL00184–183). Dr. Healy's letter, written in response to a request from Plaintiff's attorney, stated that, "Mr. Dirnberger was treated here for coronary disease, as well as ongoing peripheral vascular disease. He continued with multiple symptomatology despite a maximal medical regimen. His symptoms could appear at rest or exertions, and I would therefore consider him inappropriate for further employment." (AR at UACL00183).

Two individuals at Unum reviewed the record on February 19, 2001 and February 20, 2001, and concluded that the materials were insufficient to make an informed decision. Accordingly, the Defendant requested additional information on February 27, 2001. On April 16, 2001, Plaintiff responded to this request and forwarded additional records from Drs. Deutsch, Vlasak, Roberts McDonald, Gaito and Moalli, along with records from Backus Hospital, St. Francis Hospital, Methodist Hospital, as well as a list of medications that Plaintiff was currently taking. (AR at UACL00292).

On May 17, 2001, Defendant presented these records and the previous ones it had received from Plaintiff to its cardiologist physician, Dr. George J. DiDonna, Associate Medical Director and Cardiologist, who concluded that there was no evidence that would preclude sedentary activity, citing that there was no functional testing as of December 12, 2000. (AR at UACL00296–294). Dr. DiDonna never met with, nor did he examine, Plaintiff, but based his conclusion on a review of the medical records.

The file was again reviewed on June 26, 2001 by Kathy Smith, Appeals Consultant in Unum's Quality Performance Support Unit. (AR at UACL00308–307). This review was a procedural, not a medical, review. On July 30, 2001, Defendant wrote to Plaintiff that its decision denying Plaintiff's claim was appropriate. (AR at UACL00312–309).

Plaintiff responded by forwarding medical records from Drs. Hutt and Loskovitz, who had performed examinations at the request of the Social Security Administration. (AR at UACL00310). Plaintiff had been awarded social security disability payments on April 23, 2000. (AR at UACL00301–299). An independent medical examination (IME) performed by Dr. Loskovitz on February 23, 2001 showed that Plaintiff reported having rest angina, chest pains, shortness of breath and claudication in his legs when he walked. (AR at UACL00318). Dr. Loskovitz noted that Plaintiff's gait was fairly poor and stated that Plaintiff would not be able to stand for any length of time at all, and would not be able to walk more than 100 yards with great difficulty, but that he should be able to sit and perform things without any envi-

ronmental restrictions. (AR at UACL00315).

Plaintiff was seen again by Dr. Hutt on March 8, 2001 at the request of the Social Security Administration for an independent psychological examination. Dr. Hutt diagnosed him with major depression under poor control with medication. (AR at UACL00319). As a result, Dr. Hutt stated that Plaintiff had major limitations with regard to stamina, and his ability to tolerate stress was greatly diminished. (Id.). Hutt determined that Plaintiff's major depression began following his November 1999 diagnosis of cancer. (AR at UACL00321). At the time of that examination, Plaintiff also reported to Dr. Hutt that his narcolepsy caused him to fall asleep several times each day, sleeping anywhere from five minutes to two hours. (AR at UACL00320).

Defendant responded to this new information on September 24, 2001, saying that the information was not sufficient to cause it to alter its decision and that the decision was final. (AR at UACL00325–00324). Plaintiff filed this action on November 26, 2001, seeking review of the denial of benefits as arbitrary and capricious and in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001.

## II. Standard of Review

A plan administrator's denial of benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); see also *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 552 (6th Cir.1998) (en

banc). The Sixth Circuit has interpreted *Bruch* to "require that the plan's grant of discretionary authority to the administrator be 'express.'" *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir.1990)). Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, that determination is evaluated under the arbitrary and capricious standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991).

In the case at bar, both parties agree that the Policy language confers such discretion and, therefore, the arbitrary and capricious standard applies. The Court finds that the language in the Policy that reads, "when making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy" is an express grant of discretion. The Court will apply the arbitrary and capricious standard accordingly.

Under the arbitrary and capricious standard of review, the Court is to uphold the administrator's determination if it is "rational in light of the plan's provision." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996). In doing so, the court may consider the parties' arguments concerning the proper analysis of the evidence contained in the administrative record, but it may not admit or consider any evidence not presented to the administrator, unless that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process or alleged bias. *Wilkins v. Baptist Healthcare System,*

Inc., *150 F.3d 609 (6th Cir.1998).*[1]

## III. Analysis

█ The administrative record in this case developed as a result of a series of ever more substantive submittals prompted by the initial denial of benefits and the subsequent appeal and review process. It appears clear that as the mountain of evidence supporting a disability determination grew, the decisionmaker's analysis failed, overlooking important evidence and seriously underappreciating the significance of other evidence while repeating the simple mantra that the new information "was not sufficient to reverse our previous decision." (See, e.g. Letter dated May 21, 2001 from Defendant to Plaintiff). The administrative record, however, demonstrates that, in fact, Defendant's decision to deny Plaintiff long term disability benefits is not supported by the evidence and that the administrator's decision must be overturned as arbitrary and capricious.

The Court's review of the administrative record reveals that the evidence contradicts Defendant Unum's conclusion as stated in the July 30, 2001 letter that "there was no support for Plaintiff's inability to perform the job of controller as of the last day worked." (AR at UACL00312–309). Namely, the Court finds that Defendant did not give *sufficient weight* to the opinions of Plaintiff's treating and examining physicians and erroneously discounted their opinions in favor of the opinion of a doctor who never examined Plaintiff.

In social security disability determinations, greater weight is to be given to a treating physician's opinion than the opinion of other doctors. 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit has not ruled on whether or not the treating physician rule applies to ERISA cases. Other circuits are divided on the issue. *Compare Regula v. Delta Family–Care Survivorship Plan,* 266 F.3d 1130, 1139 (9th Cir.2001) (holding that the same rationale for the treating physician rule in social security cases applies to ERISA cases as well), *Donaho v. FMC Corp.,* 74 F.3d 894, 901 (8th Cir.1996) (applying the treating physician rule in disability case under ERISA), *with Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 126 (4th Cir.1994) (rejecting the treating physician rule when an ERISA plan

---

1. Where a conflict of interest exists, however, the court should consider that factor. "If the benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighted as a 'factor [] in determining whether there is an abuse of discretion.'" *Bruch,* 109 S.Ct. at 956–57, 109 S.Ct. 948 (citation omitted). The Eleventh Circuit, in *Brown v. Blue Cross & Blue Shield of Ala., Inc.,* 898 F.2d 1556, 1561 (11th Cir.1990), has pointed out the difficulty of integrating factors such as self-interest into the legal standard for review where an insurance company serves as the decision-making fiduciary for benefits that are paid out of the insurance company's assets rather than out of the assets of the employee benefit plan. "Where an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual con-

flict with its profit-making role as a business, and the conflict of interest is substantial." *Id.* at 1561–62. When such a conflict exists, the arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstance of the inherent conflict of interest. *Id.* at 1563. See also *Marchetti v. Sun Life Assurance Co. of Canada,* 30 F.Supp.2d 1001 (M.D.Tenn.1998) (citing *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991).

The Plaintiff asserts that such a conflict exists in this case, in that Unum is both fiduciary and underwriter and decision maker. Defendant disagrees, asserting that Carlin, not Unum, is the plan administrator of the policy; therefore, there exists no conflict of interest. The Court concludes that the denial of benefits was arbitrary and capricious without resolving the question of whether there was a conflict of interest.

administrator is making a determination about the medical necessity of treatment); *Salley v. E.I. DuPont De Nemours & Co.,* 966 F.2d 1011, 1016 (5th Cir.1992) (expressing "considerable doubt about holding the rule applicable in ERISA cases"), *Jett v. Blue Cross & Shield of Ala., Inc.,* 890 F.2d 1137, 1140 (11th Cir.1989) (stating that the rule is not applicable to determinations under ERISA-governed plan where treating physician has an economic interest in benefits being paid).

While recognizing those courts that have ruled the treating physician's rule does not apply to ERISA cases, this Court notes that those cases, while refusing to provide *complete* deference to the treating physician, qualify their statements by asserting that they should be accorded *appropriate weight* in the context of the whole. Therefore, this Court agrees that the opinions of physicians who actually see and examine a claimant should be accorded reasonable consideration in the context as a whole; in the instant case Unum did not assign the opinions of Plaintiff's treating and examining physicians appropriate weight in reviewing Plaintiff's disability claim. *See Marchetti v. Sun Life Assurance Company of Canada,* 30 F.Supp.2d 1001, (M.D.Tenn.1998) (finding plan administrator's denial of benefits was arbitrary and capricious where it did not mention at all the report of plaintiff's treating physician and finding further that the defendants erroneously relied upon a report by a physician who never saw or examined plaintiff).

Plaintiff has presented substantial proof from the three examining and treating physicians that Plaintiff was totally and permanently disabled. Drs. Healy, Vlasak and Deutsch[2] all opined that Plaintiff was totally and permanently disabled as of the date he applied for disability benefits.

This conclusion was reached and recorded by Dr. Deutsch on July 30, 2000, but was never referred to or acknowledged by Defendant. Defendant dismissed the claim, merely asserting that there was no objective evidence to support his conclusions: "Dr. Deutsch listed Dirnberger's restrictions as 'no exertion' and his prognosis as 'permanently disabled.' Dr. Deutsch did not provide any objective evidence to support Dirnberger's restrictions and limitations." (Def. Response at 10).

Dr. Healy wrote on January 2, 2001, in response to a request from Plaintiff's attorney, that, despite the maximum medical regimen, Plaintiff continued with multiple symptomatology and that the symptoms appeared at rest or exertion. He further added that he considered Plaintiff "inappropriate for further employment." (AR at UACL00183). Defendant acknowledged Healy's diagnosis as permanently disabled, but dismissed it because "he didn't provide any support for his diagnosis in the letter." (Def. Response at 11). The Court finds that Defendant's reasoning inadequately considered the conclusions of those physicians.[3]

---

**2.** Of course, Plaintiff was also examined by Drs. Hutt and Loskovitz at the request of the Social Security Administration, and their records were forwarded to Unum on August 24, 2001.

**3.** Defendants argue that the opinions of treating physicians should not be accorded more weight than their own consultant, relying on *Jett v. Blue Cross and Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1140 (11th Cir.1989), for the

proposition that the treating physician rule should not apply to ERISA cases. That case, however, stated that the opinions of treating physicians should not be accorded complete deference in order to avoid any conflict of interest that might arise when the treating physician has an economic incentive. In this case, Drs. Healy and Deutsch gave their opinions after Plaintiff had moved to Memphis from Connecticut and they were no longer

Similarly, Dr. Vlasak wrote on January 16, 2001, that, based on Plaintiff's chest pains, Leriche's syndrome, peripheral vascular disease, iliac artery stenosis, arteriosclerosis, prostate cancer, diabetes, hyperlipidemia and all the medications prescribed for his symptoms, Plaintiff was precluded from undertaking even sedentary employment.

Defendants rely on the medical opinion of Dr. George R. DiDonna, one of Unum's medical consultants, that Plaintiff could perform sedentary work. DiDonna's based his conclusion on the fact that there was no recent functional testing as of December 22, 2000 and, therefore, no evidence of a cardiac impairment. Dr. DiDonna never examined Plaintiff, nor did he inquire from Plaintiff's treating physicians whether or not Plaintiff was capable of performing the occupation of controller. That it was Unum's responsibility to do so is underscored by the fact that Plaintiff did not have access to the description of the occupation of controller as defined by Unum's vocational expert, and was, therefore, not in a position to specifically assert whether or not he was capable of performing those specific tasks.

Also, Defendant points to the fact that there were other medical consultants in addition to Dr. DiDonna that stated Plaintiff was not permanently and totally disabled. These include Nurse Caron, Dr. Bellino and Karen Mills. However, these consultants reviewed Plaintiff's records in September and October 2000, before Defendant received the opinions of Drs. Healy and Vlasak opining that Plaintiff was permanently and totally disabled, Dr. Vlasak's office records, the July 2000 and December 2000 hospitalization records, sleep apnea tests, and the IME's from

Drs. Loskovitz and Hutt. Therefore, the Court considers these conclusions to have little probative value.

Defendant states in the July 2001 letter denying Plaintiff's claim that Plaintiff's "cancer was stable." The Defendant fails to consider, however, that Plaintiff's treating physicians asserted that while the cancer may be stable, the treatment was on-going and the Plaintiff continued to have symptoms. (Pla. Motion for Reversal of Denial of Benefits, at 20). Indeed, Plaintiff continued on his neoadjuvent hormonal therapy, x-rays and CT scans were ordered, and radioactive implants were inserted on May 16, 2000. (AR at UACL00246).

In support of its decision to deny benefits, Defendant also points to a maximal treadmill exercise test conducted on Nov. 5, 1999, at Backus Hospital. (AR at UACL00070). This test showed that Plaintiff could exercise to seven mets [4] and presented fair exercise capacity. Defendants assert this result supports its contention that Plaintiff could perform sedentary activity. Considering that this test took place eight months before Plaintiff's date of disability, however, the Court fails to see how it rebuts the opinions of the treating physicians and finds that the test lacks any probative value.

Furthermore, Defendant failed to take adequate notice of the medications Plaintiff was prescribed for his symptoms and his depression diagnosis. Dr. Vlasak forwarded a list of medications to Defendant at their request on January 17, 2002. Despite the fact that Defendant was on notice of these numerous medications, Defendant failed to take into account what effect these medications would have on his ability to fulfill his job requirements. Defendant

treating him. Thus, there existed no possible economic incentive.

4. Met indicates metabolic equivalent of a unit of sitting, resting oxygen uptake.

argues that because Dr. Vlasak failed to provide objective evidence to support his assessment that Plaintiff was disabled due to the side effects of his multiple medications, his statement is unsupported. This argument is unconvincing to the Court. Dr. Vlasak plainly stated that the medications rendered Plaintiff disabled. (Pla. Motion for Reversal of Denial of Benefits, at 17).

Similarly, Defendant acknowledges that Plaintiff was diagnosed with depression and recognizes the records that support such a diagnosis. However, Defendant failed to take this condition into consideration in determining the disability claim, explaining that "because there were some references to depression in the medical records, if Dirnberger intended to claim disability due to depression—as he had not done up to this point, he would have to provide Unum with proof of this claim." (Def. Response at 2). Finding that the Plaintiff was disabled *totally due to his depression* and finding that Plaintiff's depression *contributed* to his disability as a part of a whole are two distinct approaches. The Court concludes that Unum erred in failing to consider Plaintiff's depression and his medications as part of the whole.

## Conclusion

The above reasons, taken together, lead the Court to find that the plan administrator's decision to deny benefits was arbitrary and capricious. Therefore, judgment is entered for the Plaintiff on his ERISA claims, and the decision of the administrator is REVERSED.