**Samuel L. ADAMS, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

No. 3:02 CV 7391.

United States District Court, N.D. Ohio, Western Division.

Sept. 3, 2003.

Stephen D. Hartman, Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Plaintiff.

Joyce D. Edelman, Porter, Wright, Morris & Arthur, Columbus, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendant's motion for summary judgment based on the Administrative Record (Doc. No. 11),[1] as to which Plaintiff has filed a

---

1. The Court construes Defendant's motion as a motion for judgment on the merits to affirm its decision to deny Plaintiff benefits. *See*

*Parker v. Union Planters Corp.,* 203 F.Supp.2d 888, 892 (W.D.Tenn.2002) (citing *Wilkins v.*

response and cross-motion for judgment on the merits (Doc. No. 16) and Defendant has filed a reply and response (Doc. No. 17). Defendant has also filed supplemental authority (Doc. No. 19) as to which Plaintiff has filed a response (Doc. No. 20).

The Court has jurisdiction to decide this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)-(f). For the reasons stated below, Plaintiff's cross-motion for judgment on the merits is granted. Defendant's motion for summary judgment based on the Administrative Record is denied.

### BACKGROUND

Plaintiff Samuel L. Adams ("Adams") appeals from Defendant The Prudential Insurance Company of America's ("Prudential") administrative denial of his claim for long-term disability benefits under an employer-sponsored plan governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Adams was an employee of Armstrong Heating and Air Conditioning who participated in a Prudential Group Plan (the "Plan") through Lennox International, Inc. that provided long-term disability benefits.

In 1994, Plaintiff severely fractured his left ankle as a result of a work-related injury. Then in 1999, Adams submitted a claim for long-term disability under the Plan, which Prudential approved for an initial period of twenty-four (24) months effective September 19, 1999. Adams has undergone four (4) surgeries on his injured ankle. Adams also fell on some ice and dislocated his left elbow in February 2000.

After the initial twenty-four (24) month period, Prudential conducted a review of Adams' medical records and requested that Plaintiff undergo an independent medical examination (IME). Professional Appointment Services, Inc. scheduled the IME, which was performed by Dr. M.C. Bernhard. He found that Adams could perform sedentary work for most of a day with certain limitations. As a consequence, Defendant determined that Plaintiff no longer met the Plan's definition of "Total Disability," and denied further benefits. On June 27, 2001, Prudential notified Adams that the termination of benefits was effective September 20, 2001. Plaintiff filed an appeal of Defendant's decision to terminate his long-term disability benefits. Adams indicated that he was unable to work due to chronic pain, dependence on narcotic pain medication and its impact on his inability to get to work. Prudential also performed an employability assessment, and identified five (5) types of jobs for which Adams was qualified and could physically perform. On December 7, 2001, Defendant denied Plaintiff's appeal, finding that he was able to obtain gainful employment in a sedentary job, and the ability to travel to work was not a material and substantial occupational duty under the Plan.

On January 23, 2002, Adams filed a second appeal, again arguing that his ability to travel to and from a job should be considered a material and substantial occupational duty, and contesting the suitability of the types of jobs Defendant had identified. Then on February 14, 2002, Prudential again denied Plaintiff's appeal. Adams appealed Defendant's decision for a third, and final time, on March 14, 2002. Defendant again reviewed the entire claim and medical file. Prudential also forwarded the medical file to Dr. Martin Hoffman for his review. Dr. Hoffman determined that Plaintiff could tolerate sedentary work, again with certain restrictions. As a result, Prudential again affirmed its decision to deny long-term disability benefits. Adams then brought the instant action al-

leging that Prudential has wrongfully denied his long-term disability benefits in violation of 29 U.S.C. § 1001 *et seq.* Plaintiff seeks damages in the amount of wrongfully denied benefits plus interest, reinstatement under the Plan, and costs and attorney's fees.

### DISCUSSION

#### A. WRONGFUL DENIAL OF ERISA BENEFITS

##### 1. Applicable Standard of Review

 Adams alleges that Prudential violated ERISA by wrongfully denying long-term disability benefits to which he is entitled under the Plan and seeks an order reinstating his benefits along with actual damages for missed benefits since September 20, 2001. "The standards of review for determining ERISA denial-of-benefits claims are well-established." *Wilkins,* 150 F.3d at 616. "With respect to review of ... [a] plan administrator's denial of benefits, ... [a] district court ... review[s] *de novo* the plan administrator's denial of ERISA benefits, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). The *de novo* standard applies to factual determinations and legal conclusions of a plan's administrator. *See id.* Under *de novo* review, the Court "must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Id.* When a plan administrator has discretionary authority to determine benefits or construe the terms of a benefits plan, a court is to "review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.' " *Sanford v. Harvard Indus.,* 262 F.3d 590, 595 (6th Cir.2001) (quoting *Yeager v. Reliance*

*Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996)).

In the instant case, the Plan states:

"Total Disability" exists when Prudential determines that all of these conditions are met:

(1) Due to sickness or accidental injury, both of these are true:

 (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

 (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

(AR SA/PRU–0029).

Defendant argues that the arbitrary and capricious standard of review applies to the case *sub judice* because the aforementioned language affords it discretionary authority to determine Adams' eligibility for long-term disability benefits as defined under the Plan. Prudential directs the Court to *McDonald v. Western–Southern Life Ins. Co.,* No C2–98–414, 2001 WL 1678793 (S.D.Ohio Dec. 14, 2001) (unreported). (Doc. No. 11, Ex. 1).

In *McDonald,* the court asserted that no "magic words" were needed to confer discretionary authority in a plan administrator, only that the grant of discretionary authority be " 'clear' in order to trigger the arbitrary and capricious standard of review." *McDonald,* 2001 WL 1678793 at *4 (citing *Perez v. Aetna Life Ins. Co.,* 150

F.3d 550, 555 (6th Cir.1998) (en banc)). *See also Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir.2002); *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir.1994); *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 n. 2 (6th Cir.1992).

On the other hand, Adams directs the Court to *Deal v. Prudential Ins. Co. of Am.*, 222 F.Supp.2d 1067, 1069 (N.D.Ill. 2002). In *Deal*, the court examined a Prudential policy containing the same language and found the appropriate standard of review to be *de novo*. *Id.* at 1069–70. In so doing, the *Deal* court stated:

> Several other district courts examining identical Prudential policy language have determined that the policy does not clearly indicate that discretion has been retained in the Plan administrators (and administrator decisions are therefore subject to plenary review). *See Ehrman v. Henkel Corp.*, 194 F.Supp.2d 813, 818 (C.D.Ill.2002) (citing *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir.2000)); *McDonald v. Timberland Co. Group Long Term Disability Coverage Program*, No. CIV 98–686–M, 2002 WL 122382, at *3 (D.N.H. Jan. 23, 2002) (citing *Herzberger* ); *Rothstein v. Prudential Life Ins. Co.*, No. CV0011329SVWAIJX, 2001 WL 793130, at *2–3 (C.D.Cal. July 10, 2001); *O'Sullivan v. Prudential Ins. Co.*, No. 00 Civ. 7915(KNF), 2001 WL 727033, at *3–4 (S.D.N.Y. June–28, 2001) (citing *Herzberger* ).

Prudential mistakenly contends that Adams reliance on *Deal* is misplaced because the Seventh Circuit has set forth "safe harbor" language which, if included in a plan, ensures that administrators retain discretion and their decisions subject to arbitrary and capricious review. *See Herzberger*, 205 F.3d at 331; *Deal* 222 F.Supp.2d at 1068. The *Herzberger* court made clear that "we forbear to make our

'safe harbor' language mandatory, its absence compelling the conclusion that the plan administrator has no discretion." *Herzberger*, 205 F.3d at 331.

The Court observes, however, that *Deal* and all of the cases cited therein, are from outside the Sixth Circuit. Moreover, many of them rely on *Herzberger*, which also held that language "to the effect that benefits shall be paid when the plan administrator upon proof (satisfactory proof) determines that the applicant is entitled to them" does not confer discretionary authority on plan administrator. *Id.* at 332. The *Herzberger* court stated:

> We hold that the mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof), does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary. Obviously a plan will not—could not, consistent with its fiduciary obligation to the other participants—pay benefits without first making a determination that the applicant was entitled to them ... That the plan administrator will not pay benefits until he receives satisfactory proof of entitlement [ ] states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer.

*Id. See also Ingram v. Martin Marietta Long Term Disability Income Plan For Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1112–13 (9th Cir.2001) (asserting that "[a]n allocation of decision making authority [to the defendant] is not without more, a grant of discretionary authority in making those decisions").

Significantly, the *Herzberger* court recognized that its was departing from the Seventh Circuit's position "in tone and emphasis" of analysis that was "more inclined to interpret ambiguous language in favor of an inference that it grants discretion to the plan administrator," which it characterized as consistent with *Perez*.[2] In *Perez*, the Sixth Circuit sitting, en banc, held that similar language granted discretionary authority to the defendant insurance company. *Perez*, 150 F.3d at 555–58.[3] *See Hall v. The Life Ins. Co. of N. Am.*, 151 F.Supp.2d 831, 834 n. 1 (E.D.Mich.2001) (asserting that the *Herzberger* court "simply believed that *Perez* was wrongly decided").

Further, the Court has identified *Knapp v. Prudential Ins. Co.*, No. 4:02–CV–130, 2003 U.S. Dist. LEXIS 6235 (W.D. Mich. April 4, 2003). In *Knapp*, a Prudential benefits plan provided "that a participant is disabled 'when *Prudential determines* that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury.'" *Id.* at *6–7. The *Knapp* court found that the "this language gives sufficient discretionary authority to Prudential to trigger application of the arbitrary and capricious standard of review." *Id.* at *7.

In addition, there are several other cases which have held that the same/simi-lar language contained in the policy at issue was sufficient to confer discretionary authority on the plan administrator. *See Roach v. Prudential Ins. Brokerage, Inc.*, 62 Fed.Appx. 294, 299, 2003 WL 1880641 (10th Cir.2003) (asserting that the district court was correct in applying the arbitrary and capacious standard); *Creed v. Prudential Life Ins. Co. of Am.*, 267 F.Supp.2d 569, 577 (E.D.La.2003) (holding that it is clear that such language grants discretionary authority to Prudential as the plan administrator); *Mitchell v. Prudential Health Care Plan*, No. 01–331–GMS, 2002 WL 1284947 at *6–7 (D.Del. June 10, 2002) (explaining that reaching a determination requires "[t]he ability to think or deliberate prior to making a decision is the touchstone of discretion"). Accordingly, the Court is persuaded that the Plan vests sufficient discretion in Prudential to require application of the arbitrary and capricious standard of review in the case *sub judice*.[4]

Pursuant to the arbitrary and capricious standard, " 'an ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are rational in light of the plan's provisions.' " *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991)). *See*

---

2. To emphasize the magnitude of its decision, the *Herzberger* court noted that "[b]ecause we are endeavoring to state a general rule with which aspects of some or our decisions may be inconsistent, we circulated this opinion in advance of publication to all the judges of the court in regular active service." *Id.* at 330.

3. In *Perez*, the subject language stated: "[the defendant] shall have the right as part of the proof of claim satisfactory evidence ... that [the claimant] has furnished all required proof of such benefits ..." *Id.* at 555.

4. The Court notes in further support of its position as to the propriety of the arbitrary and capricious standard of review, Defendant argues that discretion in conferred by the presence of the additional following language:

> **Proof of Loss:** Prudential must be given written proof of the loss for which the claim is made under the Coverage. This proof must cover the occurrence, character and extent of that loss. It must be furnished within 90 days ...

(AR SA/PRU–0037). This argument is mistaken. *See Hoover*, 290 F.3d at 808 (asserting that "[t]he requirement that the insured submit written proof of loss, without more, does not contain 'a clear grant of discretion ... to determine benefits or interpret the plan.' ") (quoting *Perez*, 150 F.3d at 557).

*also Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir.2000) (describing review under the arbitrary and capricious standard as: " 'when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.' ") (quoting *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir. 1989)); *Brown v. National City Corp.,* 974 F.Supp. 1037, 1041–42 (W.D.Ky.1997), *aff'd,* 166 F.3d 1213 (6th Cir.1998) (unpublished decision). Adams received benefits for twenty-four (24) months prior to Prudential's termination in September 2001. Under the terms of the Plan, he must show that Prudential acted arbitrarily and capriciously in denying his long-term disability benefits because Adams was "not able to perform for wage or profit the material and substantial duties of any job for which [he is] reasonably fitted by [his] education, training or experience."

### 2. Treating Physician Rule

■ Adams urges the Court to apply "the treating physician rule." *See Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 532 (6th Cir.2003) (holding that "the treating physician rule should apply in ERISA cases, requiring courts to defer to the opinions of a claimant's treating physician unless there is substantial evidence contradicting them"). On May 27, 2003, however, the United States Supreme Court issued *Black & Decker Disability Plan v. Nord,* —— U.S. ——, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). In *Nord,* the Court resolved a split among the Circuits "on the propriety of judicial installation of a treating physician rule for disability claims within ERISA's domain." *Id.* at 1969. The *Nord Court* held that the treating physician rule does not apply stating: "We hold that plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Id.* at 1967. Accordingly, *Nord* implicitly over-

rules *Darland,* and the Court does not accord deference to the opinion's of Adam's treating physician. *See Eastover Mining Co., v. Williams,* 338 F.3d 501, 507 (6th Cir.2003) (recognizing that *Darland* has been overruled).

### B. REVIEW OF THE ADMINISTRATIVE RECORD

On January 10 and March 26, 2001, Prudential notified Plaintiff that the initial benefits period would terminate on September 18, 2001 (AR SA/PRU 676–79) and as a result, Defendant would review Adams' status to determine his continued eligibility. *Id.* Since the initial benefits period was to expire, Defendant noted that the continuation of benefits was premised on Adams satisfying the definition of "Total Disability" pursuant to Section 1(b) as set forth above.

On June 27, 2001, Prudential informed Plaintiff that his long-term disability benefits would be terminated effective September 20, 2001, and that he had a right to appeal this decision. (AR SA/PRU 618–19). Defendant determined that Adams did not satisfy the definition in Section 1(b), asserting that Plaintiff had "the ability to seek gainful employment within [his] restrictions that have been submitted by [his] doctor." (AR SA/PRU 619). Defendant points to a physicians statement from Plaintiff's treating physician, Dr. Jessop McDonnell, dated April 6, 2001, in which he notes that Adams was capable of performing work duties consisting of only sitting along with limited use of his left upper extremity. (AR SA/PRU 638). Prudential also directs the Court to a March 31, 2000 letter from Dr. McDonnell to Dr. Ben Ball, Adams' primary physician, where he states that "Sam's doing beautifully." (AR SA/PRU 570).

Prudential also relied on the IME performed by Dr. Bernhard. (AR SA/PRU 460–64). Dr. Bernhard opined that Adams

was unable to perform his job due to left elbow and left knee instability, along with problems associated with his ankle reconstruction. (AR SA/PRU 462). However, he determined that Plaintiff was capable of performing light duties "such as sit-down work, as well as nonweightbearing type of activities." *Id.* Dr. Bernhard also listed several restrictions, including a fifteen (15) pound lifting limit, the inability to climb ladders or do frequent use of stairs, and could stand for only one-hour along with frequent breaks. (AR SA/PRU 462–63). Dr. Bernhard concluded that Adams could "resume work at a clerical-type position with sit-down work for the majority of his day." (AR SA/PRU 464).

On September 24, 2001, Plaintiff sent Prudential a letter appealing its decision, which provided a substantial amount of supplemental material. Adams asserted that "the pain medication necessary to maintain a *minimal* amount of functioning is in itself limiting and could be considered dangerous in a work environment." (AR SA/PRU 167). Adams maintained that Defendant should consider that he is dependent on narcotic pain medication that impacts both his physical and mental capacity to work, and that he suffers from chronic pain. (AR SA/PRU 175–76). Dr. McDonnell also sent a letter, dated October 21, 2001, in support of Plaintiff's appeal stating:

> Please consider the following. This gentleman is a very active young man who is raising a family and had an excellent work history up until his injury. He has significant and disabling problems with his ankle and foot that remains to this day very painful. . . . *We have had to use Neurontin as recommended by the Pain Management Clinic at Medical College of Ohio. This young man takes Zoloft as recommended by his personal physician, Dr. Ben Ball.* Sam's depression has responded very nicely to the Zoloft. Pain control has been an extremely difficult issue for this young man. He takes Oxycontin and as well Demerol. He uses Demerol primarily for breakthrough pain if the Oxycontin will not control it.
>
> I am very impressed that your company feels that this gentleman is not totally disabled. I have suggested to Sam that he obtain a letter from you and your company that you will take responsibility for any decisions he makes, any injuries he suffers to himself or any injuries he causes for the company that he works for, as well as take full and complete responsibility for any poor advice he gives or any problems he has driving to and from work, which again you so kindly suggest that he can do. *The reason I think you people should take responsibility is because this gentleman takes Oxycontin and Demerol on a daily basis and I think it is just sort of absurd for you people to say that he can work taking those medications.* It is difficult for this young man to make it to my office for an appointment, much less do an 8 hour job.

(AR SA/PRU 165).

On December 7, 2001, Prudential notified Plaintiff that it was upholding its decision. (AR SA/PRU 671–74). Defendant maintained that a review of Adams' medical records and Dr. Bernhard's IME supported Plaintiff's ability to work at a sedentary job. Prudential's letter identified five (5) sedentary jobs that it believed fit with Adams' employment history, experience and education.[5] Defendant acknowl-

---

5. The sedentary occupations, which include supervisor/clerical, office supervisor/animal hospital, automobile club safety program coordinator, customer service representative and customer complaint clerk, were identified as part of an employability assessment/transferable skills analysis. (AR SA/PRU 148).

edged that narcotics might limit his ability to drive or operate heavy machinery, but contended it would not impact his ability to perform a sedentary job. While recognizing the impact of Plaintiff's pain medication on his ability to drive, Prudential asserted that this was not a material and substantial job duty pursuant to the Plan's terms.

Adams' was informed that he could make a second appeal, which he elected to do represented by counsel. (AR SA/PRU 239–241). Plaintiff's second appeal was again premised on Adams inability to commute to work and perform once he arrived. Plaintiff also maintained that he was over qualified for the sedentary occupations Defendant had identified, and the potential salaries were unsatisfactory. Adams noted that Social Security had found him disabled. On February 14, 2002, Prudential again upheld its termination of Plaintiff's long-term disability benefits. (AR SA/ PRU 665–67). Defendant again contended that the ability to travel to work was not a part of the criteria for assessing under Section 1(b) of the Plan. Prudential also asserted that the occupations previously identified were consistent with his skills and education based on the limitations imposed by his physical condition.

Plaintiff was informed of his right to make a third and final appeal to Prudential's Appeals Committee. Adams again asserted that Defendant should consider his inability to travel to work, and regimen of narcotic pain killers. As part this final review, Prudential relied on the opinion of Dr. Hoffman to whom it had forwarded Adams' medical file prior to making its final determination. (AR SA/PRU 301– 02). Dr. Hoffman, who did not examine Plaintiff, noted that Dr. McDonnell is of the opinion that Adams is unable to work

and therefore disabled due to chronic pain and the need to take narcotic pain medication. He also recounted Dr. Bernhard's opinion that Plaintiff could perform sedentary work with requisite limitations. Based on the records provided to him, Dr. Hoffman was of the "opinion that Mr. Adams would likely be able to reasonably be expected to tolerate sedentary work with limited standing and walking and limited use of the left upper extremity." (AR SA/PRU 302). On June 26, 2002, Prudential upheld its decision to terminate Adams' long-term disability benefits noting in particular that Dr. Hoffman's assessment was consistent with that of Dr. Bernhard. (AR SA/PRU 655–58).

■ Based on this record, Defendant contends that its decision to terminate Adams' long-term disability benefits was rational and supported by reasonable explanation, and was neither arbitrary nor capricious. Plaintiff seeks to reverse Prudential's decision due to its failure to consider his ability to commute to work as a material and substantial occupational duty, the impact of chronic pain from which he suffers and his daily use of narcotics on his ability to work.

The Court is unpersuaded by Adams' argument that his inability to travel to and from work is a material and substantial duty that Defendant must consider. While the Court is sympathetic, Plaintiff fails to direct the Court to either any legal authority or language related to the Plan's definition of "Total Disability" in support of his position. In contrast, Prudential directs the Court to *Chandler v. Underwriters Labs., Inc.*, 850 F.Supp. 728 (N.D.Ill.1994) and *Schneider v. Continental Cas. Co.*, No. 95 C 1820, 1996 U.S. Dist. LEXIS 19631 (N.D.Ill. Jan. 7, 1997).[6] In *Chandler*, the court stated:

6. Defendant also cites *Salmon v. Dade County Sch. Bd.*, 4 F.Supp.2d 1157 (S.D.Fla.1998) and *Tucker v. Ogden Corp. and Prudential Ins.* Co., No. 93–6683, 1995 WL 766314 (E.D.Pa. Dec. 28, 1995).

It was surely neither arbitrary nor capricious for the Committee to have decided that [the plaintiff] was " 'able to perform the necessary duties of' his desk job and that it was not required to view his inability to get to that job from his home in Tinley Park as a disabling 'condition.' "

. . . . .

It is absurd to suggest that it is arbitrary and capricious for the Appeals Committee to have decided that the fortuity of where an employee lives (something within the employee's control, unlike a truly medical disability) is not relevant to finding of disability under the Plan—a concept that expressly focuses on medically disabling conditions.

*Chandler,* 850 F.Supp. at 738. *See also Schneider,* No. 95 C 1820, 1996 U.S. Dist. LEXIS 19631 at *28–30 (asserting that it was neither arbitrary nor capricious to terminate the plaintiff's short-term disability benefits based on a determination that the inability to tolerate the commute to work was not a necessary job function).

Likewise, any contention that Defendant failed to consider the impact of chronic pain is also unconvincing. Dr. Bernhard and Dr. Hoffman considered Adams' physical state in making the recommendations on which Prudential relied in determining that Plaintiff was not "Totally Disabled" as defined under section 1(b). In his IME, Dr Bernhard notes:

[F]rom [Adams] description of his job, which is very physical and standing most of the time, it is apparent that, with his significant left elbow instability, left knee instability, as well as synovitis about his lateral ankle ligament reconstruction and his subtalar arthrosis, he is unable to perform his job.

(AR SA/PRU 462). Only after this observation does Dr. Bernhard conclude that Plaintiff could perform sedentary job duties in combination with appropriate restrictions. Moreover, Dr. Hoffman, prior to opining that Plaintiff could perform sedentary work with restrictions, states:

Based upon the records provided, there is evidence that Mr. Adams does indeed have physical impairments. Dr. Bernhard has documented physical findings including valgus instability of the left elbow, the presence of synovitis at the left ankle, and the finding of a positive anterior drawer and Lachman's maneuver.

(AR SA/PRU 301).

On the other hand, Plaintiff persuasively argues that Prudential improperly failed to consider the impact of the narcotic pain relievers Adams takes on a daily basis on his ability to work. Adams directs the Court to *Godfrey v. BellSouth Telecomm., Inc.,* 89 F.3d 755 (11th Cir.1996) and *Dirnberger v. Unum Life Ins. Co. of Am.,* 246 F.Supp.2d 927 (W.D.Tenn.2002). In *Godfrey,* the court affirmed the district court's finding that a denial of benefits was arbitrary and capricious in part because the defendants "ignored the effects of the medication that [the plaintiff] had to take on a daily basis due to her condition." *Godfrey,* 89 F.3d at 758–59. The only rational explanation was that taking this into account would confirm that the plaintiff was disabled. *Id.* at 759. Likewise, in *Dirnberger,* the court asserted that the defendant's denial of benefits was arbitrary and capricious based on the plaintiff's ability to return to his *sedentary* job due in part to the failure "to take into account what effect [the plaintiff's] medications would have on his ability to fulfill his job requirements." *Dirnberger,* 246 F.Supp.2d at 934. *See also Stvartak v.*

*Eastman Kodak Co.,* 945 F.Supp. 1532, 1547 (M.D.Fla.1996) (holding that a plan administrator abused his discretion "in discounting the effects of potent anti-depressant and anti-psychotic medications that [the plaintiff] took on a daily basis to remain at work").[7]

In the case *sub judice,* Defendant asserts that it properly accounted for Plaintiff's medications noting that Adams use of narcotics limits his ability to drive and operate heavy machinery. It is clear, however, that Oxycontin impacts more than the ability to drive, or operate heavy machinery. "Oxycontin may interfere with [one's] ability to do certain things that require your full attention." (AR SA/PRU 213). Plaintiff directed Defendant to The Physicians Desk Reference 2001, describing the uses and side effects of Oxycontin. (AR SA/PRU 168–69). As discussed therein, it is used for moderate to severe pain. Moreover, "[t]he most frequently observed adverse reactions include light-headedness, dizziness, sedation, nausea and vomiting. These effects seem to be more prominent in ambulatory than in non-ambulatory patients." (AR SA/PRU 169). In addition, side effects associated with Neurontin include dizziness, drowsiness, loss of normal muscular coordination, fatigue and rapid to-and-fro movement of one's eyes. (AR SA/PRU 200). Common side effects connected to Demerol include "[d]izziness, light-headedness, nausea, sedation, sweating [and] vomiting." (AR SA/PRU 199). There are also a number of less common side effects. *Id.* Zoloft is also

associated with a number of negative side effects. (AR SA/PRU 200–01).

Dr. McDonnell's letter, *supra,* makes clear that Adams has been taking Oxycontin and Demerol on a daily basis to control pain, which will impede his ability to work at any job. He also recounts that Plaintiff has had to use Neurontin and was taking Zoloft. In contrast, Dr. Bernhard's IME on which Prudential heavily relies, notes that Plaintiff's medications include Zoloft, Cardizem, Neurontin, Demerol and Oxycontin, but without any further consideration. Similarly, Dr. Hoffman's report is also devoid of any discussion other than to point out that the dose and amount of time Plaintiff has been taking narcotic analgesics might affect Adams ability to drive. Though this may be irrelevant for determining whether Adams is disabled under the Plan, the Court cannot ignore that the fact that Dr. Hoffman felt limited in his ability to assess the impact because "the amount of narcotic analgesics utilized by Mr. Adams are not evident from the records provided." (AR SA/PRU 301).

In short, the Court finds that Prudential's decision to terminate Adams' benefits on September 20, 2001 was arbitrary and capricious. The Court reverses Prudential's decision to terminate Adams long-term disability benefits, and awards Adams damages in the amount of benefits denied from September 20, 2001 through the date of this judgment.[8] Accordingly, Plaintiff's cross-motion for judgment on the merits is granted, and Defendant's motion for summary judgment based on the Administrative Record is denied.

---

7. Defendant asserts that these cases are not persuasive because they address the impact of an employee's pain and medication on their opportunity to return to their original job, not "any job" as in the case *sub judice.* The Court will not linger on this argument other than to note this is a distinction without a difference.

8. "An award of prejudgment interest serves to compensate the 'beneficiary for the lost interest value of money wrongfully withheld from him or her.'" *Hoover,* 290 F.3d at 810 (quoting *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 618 (6th Cir.1998)).

### C. COSTS AND ATTORNEY'S FEES

■ Adams also seeks costs and attorney's fees pursuant to 29 U.S.C. § 1132(g). 29 U.S.C. § 1132(g)(1) provides:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

To determine whether to award costs and attorney's fees, the Court applies the following five-factor test:

> 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions.

*Hoover*, 290 F.3d at 809 (quoting *Maurer v. Joy Techs, Inc.*, 212 F.3d 907, 919 (6th Cir.2000)).

■ In the case *sub judice*, only the fourth factor is not satisfied. Defendant's culpability is high as its decision to terminate Adams' long-term disability benefits was arbitrary and capricious. *See Hoover*, 290 F.3d at 809–10. Prudential is a large company able to satisfy an award of costs and reasonable attorney's fees. An award of costs and fees should deter Defendant and other like defendants from ignoring the effect of daily doses of potent medication on a person's ability to work. While Adams does not request fees to confer a common benefit or resolve an important legal issue, it is clear that the relative merits' of the parties' positions militate in favor of an award of costs and fees. Thus,

Adams request for costs and attorney's fees is granted. Plaintiff shall have sixty (60) days to provide supporting data.

### CONCLUSION

For the reasons stated below, Plaintiff's cross-motion for judgment on the merits (Doc. No. 16) is granted. Defendant's motion for summary judgment based on the Administrative Record (Doc. No. 11) is denied. Plaintiff's request for costs and attorney's fees is also granted.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiff's motion for judgment on the merits (Doc. No. 16) is granted.

FURTHER ORDERED that Defendant's motion for summary judgment on the Administrative Record (Doc. No. 11) is denied and the decision to terminate Plaintiff's long-term disability benefits is reversed.

FURTHER ORDERED that Plaintiff's request for costs and attorney's fees pursuant to 29 U.S.C. § 1132(g) is granted.